IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03167-CMA-CBS

WYATT T. HANDY JR.,
        Plaintiff,
v.

DR. SUSAN TIONA,
DESIREE ANDREWS,
VALERIE BAZAR,
GREG WILKERSON,
APRIL CALDWELL,
MARY CARNELL,
CORRECTIONAL HEALTH PARTNERS,
COLORADO DEPARTMENT OF CORRECTIONS,
CORRECTIONAL CORPORATION OF AMERICA,
COMMUNITY EDUCATION CENTERS, and
STATE OF COLORADO,
        Defendants.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on: (1) the Motion to Dismiss filed by Defendants

Tiona, Andrews, Wilkinson, Bazar, Correctional Health Partners ("CHP"), and Corrections

Corporation of America ("CCA"), (2) the Motion to Dismiss filed by Defendants Caldwell, Carnell,

and Community Education Centers ("CEC"), and (3) the Motion to Dismiss filed by Defendant

Colorado Department of Corrections ("CDOC").  Pursuant to the Order Referring Case dated

February 10, 2015 (Doc. # 22) and the memorandum dated May 26, 2015 (Doc. # 69), these

matters were referred to the Magistrate Judge.  The court has reviewed the Motions, Mr.

Handy's Responses (filed June 24, 2015) (Docs. # 73, # 75, and # 76), Defendants' Replies

(filed July 9, 2015, July 10, 2015, and July 13, 2015) (Docs. # 79, # 80, # 81), the pleadings, the

entire case file, and the applicable law, and is sufficiently advised in the premises.

1

I.      Statement of the Case

Mr. Handy alleges that in 2003 he was diagnosed with keratoconus, "a degenerative disorder of the eye in which structural changes within the cornea cause it to thin and change to a more conical shape than the more normal gradual curve" that "has caused substantial distortion of vision in Plaintiff's eye" and "Plaintiff's visual acuity to become impaired at all distances." (*See* Doc. # 53 at 7 of 27, ¶¶ 6-9).  In August of 2013, he "was delivered to" the Colorado Department of Corrections ("CDOC") "to serve the remainder of his four year CDOC sentence." (*See id.*).  He alleges that he received inadequate or no medical care and was not accommodated for his keratoconus.  He bases all of his claims on the denial of "scleral lenses or surgery" to treat his keratoconus.  (*See* Doc. # 53 at 7 of 27, ¶¶ 6-9, *see also* 12-13, 15, 17-25 of 27).  In January of 2015, Mr. Handy received the scleral lenses he sought.  (*See* Responses (Doc. # 73 at 10 of 23, Doc. # 75 at 10-11 of 20, Doc. # 76 at 10 of 23)).

At the time of the filing of the First Amended Complaint, Mr. Handy was incarcerated in the CDOC.  He has since been paroled.  (*See* Notice of Change of Address (Doc. # 85), CDOC Offender Search, www.doc.state.co.us).  Mr. Handy commenced this civil action in his *pro se* capacity on November 21, 2014.  (*See* Prisoner Complaint (Doc. # 1), "Order Assigning Case" (Doc. # 7)).  He timely filed his First Amended Complaint ("FAC") on April 9, 2015.  (*See* Doc. # 53).  Mr. Handy alleges six federal claims and seven state law claims against all of the Defendants "in their individual capacities . . . and in their official capacities" under Title 42 U.S.C. § 1983 and Colorado state law.  (*See* Doc. # 53 at 7, 12, 13, 15, 17-25 of 27).  Mr. Handy seeks "declaratory and other injunctive &/or equitable relief as to each Defendant in their individual & official capacity," and compensatory and punitive damages.  (*See* Doc. # 53 at 27 of 27).

II.     Standard of Review

Defendants move to dismiss the FAC pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6).  Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of

jurisdiction over the subject matter."  Defendants' assertion of Eleventh Amendment immunity

constitutes a challenge to the allegations of subject matter jurisdiction in the FAC.  *See Ruiz v.*

*McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) ("an assertion of Eleventh Amendment

immunity concerns the subject matter jurisdiction of the district court");  *Fent v. Okla. Water Res.*

*Bd.*, 235 F.3d 553, 559 (10th Cir. 2000) ("Once effectively asserted [Eleventh Amendment]

immunity constitutes a bar to the exercise of federal subject matter jurisdiction.") (original

emphasis omitted)).  As the party asserting jurisdiction, Mr. Handy bears the burden of

establishing that this court has jurisdiction to hear his claims.  *See Celli v. Shoell*, 40 F.3d 324,

327 (10th Cir. 1994) ("Mere conclusory allegations of jurisdiction are not enough; the party

pleading jurisdiction must allege in his pleading the facts essential to show jurisdiction.")

(internal quotation marks and citations omitted).

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon

which relief can be granted."

> In reviewing a motion to dismiss, this court must look for plausibility in the
> complaint.   Under this standard, a complaint must include enough facts to state a
> claim to relief that is plausible on its face.  The allegations must be enough that, if
> assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for
> relief.

*Corder v. Lewis Palmer School Dist. No. 38*, 566 F.3d 1219, 1223-24 (10th Cir. 2009) (internal

quotation marks and citations omitted).  The burden is on the plaintiff to frame "a complaint with

enough factual matter (taken as true) to suggest" that he is entitled to relief.  *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 556 (2007).

3

Because Mr. Handy appears *pro se*, the court reviews his "pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, the court cannot be a *pro se* litigant's advocate.  *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) (court's role is not to act as pro se litigant's advocate).  The court should not "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

III.   Analysis

A.   Liability of Defendants CDOC and State of Colorado for Money Damages

The Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It has been interpreted to bar a suit by a citizen against the citizen's own state in federal court.  *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).  The CDOC is considered an agency of the State of Colorado.  *See* Colo. Rev. Stat. § 24-1-128.5.  The Eleventh Amendment confers total immunity from suit, not merely a defense to liability.  *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citation omitted).  The Eleventh Amendment also provides immunity "when [s]tate

officials are sued for damages in their official capacity." *Peterson v. Martinez*, 707 F.3d 1197, 1205 910th Cir. 2013).  To the extent that Mr. Handy is suing Defendants CDOC, the State of Colorado, and the individual employees of the State in their official capacities for money damages, such claim is properly dismissed without prejudice for lack of subject matter jurisdiction.

B.     Injunctive Relief

The Eleventh Amendment does not always bar actions in federal court seeking injunctive relief against the State.  *See Ex parte Young*, 209 U.S. 123, 159-60 (1908) (holding that the Eleventh Amendment generally does not bar official-capacity claims seeking prospective injunctive relief from a state official).  In addition to money damages, Mr. Handy seeks "[a]ppropriate declaratory and other injunctive &/or equitable relief as to each Defendant in their individual & official capacity." (*See* Doc. # 53 at 27 of 27).  "[I]n January 2015," Mr. Handy received the scleral lenses he sought.  (See Responses (Doc. # 73 at 10 of 23, Doc. # 75 at 10-11 of 20, Doc. # 76 at 10 of 23)).  Further, at the time that the events underlying this lawsuit began, Mr. Handy was incarcerated at KCCC.  (*See* Doc. # 53 at 8 of 27).  On July 11, 2014, he was transferred from the KCCC to the CMRC.  (*See id.* at 9 of 27).  He is currently on parole. His request for injunctive relief falls squarely within the mootness doctrine, as any injunctive relief directed to Defendants would have no practical impact now that he has received the scleral lenses he sought and is no longer incarcerated at the KCCC or the CMRC.  *See, e.g., Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (dismissing as moot a prisoner's First Amendment claim for declaratory relief after prisoner was transferred to a different prison); *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (prisoner's transfer to another prison mooted his claims for injunctive and declaratory relief);  *Shimabuku v. Britton*, 503 F.2d 38, 44

(10th Cir. 1974) (rewritten prison regulations mooted inmates' claim for injunctive relief because "it thus appears that appellants have already received everything for which they asked"); *Woulard v. Food Service*, 294 F. Supp. 2d 596, 602 (D. Del. 2003) (inmate's transfer from state prison to federal prison mooted his claim for injunctive relief against state prison officials pursuant to § 1983).

Nor is this the type of claim to which an exception to the mootness doctrine applies, as there is no reasonable expectation that Mr. Handy will be subjected to the alleged conduct again. *See Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (recognizing exception to the mootness doctrine where there is a "reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party") (internal quotation marks and citation omitted). *See also City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) ("[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality."). Mr. Handy's request for "declaratory and other injunctive &/or equitable relief" is properly dismissed as moot.

C.     Claims One and Two: Americans with Disabilities Act and Rehabilitation Act

Mr. Handy alleges violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102, and section 504 of the Rehabilitation Act, 29 U.S.C. § 794. (*See* Doc. # 53 at 7-12 of 27). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Rehabilitation Act prohibits exclusion based on a disability from service availability, accessibility, delivery, employment, and the administrative activities and

responsibilities of organizations receiving Federal financial assistance.  29 U.S.C. § 794.  Under

either the ADA or the Rehabilitation Act, Mr. Handy must show that he was "otherwise qualified"

for the benefits he sought and that he was denied those "solely by reason of disability."

*Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (citation omitted),

*overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.(2002).  "[T]he failure to provide

medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in

certain circumstances, does not constitute an ADA violation."  *Handy v. Meyer*, No. 11-cv-

00644-WYD-KMT, 2011 WL 7478990, at * 8 (D. Colo. Dec. 30, 2011) (citations omitted), *report

and recommendation adopted*, 2012 WL 845460 (D. Colo. Mar. 9, 2012).  Here, Mr. Handy

"seeks to premise an ADA violation on" the denial of "scleral lenses or surgery."  *Id.  (See also*

Doc. # 53 at 7-1 of 27).  "[T]hese allegations cannot sustain a claim premised on a violation of

Title II of the ADA."  *Id.  See also Fitzgerald,* 403 F.3d at 1144.  (Mr. Handy's claims "are the

sort of purely medical decisions that we have held do not ordinarily fall within the scope of the

ADA or the Rehabilitation Act.").  Nor would Mr. Handy have been "otherwise qualified" for the

medical treatment he sought in the absence of his alleged disability, as his alleged disability in

this case was the reason why he was seeking medical treatment.  For these reasons, Claim

One is properly dismissed with prejudice for failure to state a claim to which relief can be

granted.

Title II of the ADA applies to an "individual with a disability who, with or without

reasonable modifications to rules, policies, or practices . . . meets the essential eligibility

requirements for the receipt of services or the participation in programs or activities provided by

a public entity." 42 U.S.C. § 12131(2).  The ADA defines "public entity" to include "any State or

local government" and "any department, agency, special purpose district, or other

instrumentality of a State, or States or local government."  42 U.S.C. § 12131(1).  All events

alleged in support of Mr. Handy's claims against Defendants Tiona, Andrews, Wilkinson, Bazar, CHP, CCA, and CEC occurred while he was incarcerated at KCCC, a facility operated by CCA. CCA is a private corporation which, pursuant to a contract with the State of Colorado, manages three correctional facilities in Colorado.  CHP is a private corporation that makes determinations regarding outside medical care for inmates incarcerated in private facilities that house CDOC inmates.  CEC is a private corporation.

While the Supreme Court has held that Title II of the ADA extends to prison inmates who are deprived of the benefits of participation in state-run prison programs, services, or activities because of a physical disability, the Court has not determined Title II's applicability to a prison run by a private corporation.  *See Pa. Dept. of Corr. v. Yeskey*, 524 U.S. 206, 211 (1998). Addressing the issue of whether private companies are public entities under the ADA when they operate pursuant to a state contract, the Tenth Circuit Court of Appeals "join[ed] the Eleventh Circuit and the overwhelming majority of other courts that have spoken directly on the issue" and held "that Title II of the ADA does not generally apply to private corporations that operate prisons." *Phillips v. Tiona*, No. 12-1055, 508 F. App'x 737, 754 (10th Cir. Jan. 23, 2013).  "In particular, [the ADA] does not apply to CCA with respect to the management of KCCC." *Id.*  As a matter of law, Defendants CCA, CHP, and CEC are not subject to liability under the ADA. Claim One is properly dismissed with prejudice as against Defendants CCA, CHP, and CEC for failure to state a claim to which relief can be granted.

Mr. Handy concedes that the FAC fails to state a claim for relief against the individual Defendants because neither the ADA nor the Rehabilitation Act creates liability against individuals who do not otherwise qualify as employers under the statutory definition.  *See* Responses (Doc. # 73 at 6 of 23, Doc. # 75 at 4 of 20, Doc. # 76 at 4 of 23), *Butler v. City of Prairie Village, Kansas*, 172 F.3d 736, 744 (10th Cir. 1999) (noting reasons for precluding

individual liability under Title VII apply equally to ADA).  *Cf. Sindram v. Merriwether*, 507 F.

Supp. 2d 7, 11–12 (D.D.C.2007) and cases cited therein.  "[T]he proper defendant in a Title II

claim is the public entity itself or an official acting in his or her official capacity."  *Hicks v. Keller*,

No. 11–cv–0422–WJM–KMT, 2012 WL 1414935, at *6 (D. Colo. April 24, 2012).  *See also Hiler*

*v. Brown*, 177 F.3d 542, 545-46 (6th Cir. 1999) (stating that the Rehabilitation Act does not

permit actions against persons in their individual capacities);  *Montez v. Romer*, 32 F. Supp. 2d

1235, 1241 (D. Colo. 1999) ("individual defendants in their individual capacities are not properly

subject to suit under the Rehabilitation Act or the Disability Act").  Defendants in their individual

capacities are properly dismissed with prejudice from Mr. Handy's Claims One and Two for

failure to state a claim to which relief can be granted.


D.      Claim Five: Fourteenth Amendment Procedural and Substantive Due Process

        Mr. Handy alleges pursuant to Title 42 U.S.C. § 1983 that Defendants violated his

Fourteenth Amendment rights to procedural and substantive due process by failing to provide

scleral lenses or surgery to treat his keratoconus.  (*See* Doc. # 53 at 17 of 27).  Section 1983

creates a cause of action where a  "person . . . under color of any statute, ordinance, regulation,

custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United

States or other person . . . to the deprivation of any rights, privileges or immunities secured by

the Constitution."  Section 1983 does not create any substantive rights; rather, it creates only a

remedy for violations of rights secured by federal statutory and constitutional law.  *Chapman v.*

*Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979).  "To state a claim for relief in an

action brought under § 1983, [plaintiffs] must establish that they were deprived of a right

secured by the Constitution or laws of the United States, and that the alleged deprivation was

committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

Mr. Handy was a convicted prisoner at all times relevant to his claims.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment upon prisoners "after [the State] has secured a formal adjudication of guilt in accordance with due process of law."  *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) (internal quotation marks and citation omitted).  In *Whitley v. Albers*, the Supreme Court recognized that the same facts could give rise to both an Eighth Amendment cruel and unusual punishment claim and a substantive due process claim under the Fourteenth Amendment.  475 U.S. 312, 326–27 (1986), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010).  However, "the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners. . . ."  *Id.* at 327.  "Every circuit that has considered the question has concluded that the Eighth Amendment is the primary source of substantive rights of prisoners and that, with regard to the rights of convicted prisoners, the legal standards under the Eighth and Fourteenth Amendments generally are congruous."  *Berry v. City of Muskogee, Okl.*, 900 F.2d 1489, 1494 n. 6 (10th Cir. 1990) (citations omitted).  *See also DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 198 n. 5 (1989) ("In *Whitley*, . . ., we suggested that a similar state of mind [deliberate indifference] is required to make out a substantive due process claim in the prison setting.");  *Daniels v. Williams*, 474 U.S. 327, 340 n. 16 (1986) (Stevens, J., concurring in judgments in *Daniels* and *Davidson v. Cannon*, 474 U.S. 344 (1986) ("in these circumstances [inmate injured in attack by fellow inmate], . . . the substantive constitutional duties of prison officials to prisoners are defined by the Eighth Amendment, not by substantive due process");  *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) ("where constitutional protection is afforded

10

under specific constitutional provisions, alleged violations of the protection should be analyzed under those provisions and not under the more generalized provisions of substantive due process.") (citations omitted).

Mr. Handy's claim alleging failure to "treat his keratoconus, in the form of scleral lenses or surgery" is properly addressed under the Eighth Amendment. *See Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) ("[c]laims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."); *Berry*, 900 F.2d at 1494 n. 6 ("Thus, we conclude that the safety and bodily integrity of convicted prisoners implicates both the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's substantive protection against state deprivation of life and liberty without due process of law, and that the legal standards under the two amendments are identical under the facts of this case. Because the Eighth Amendment provides the primary source of protection for prisoners, we will, however, refer to the standard as an Eighth Amendment standard.") (citations omitted). Nor does Mr. Handy make any allegation to support his purported claim for violation of his Fourteenth Amendment procedural due process rights. (See Doc. # 53 at 17 of 27, Response (Doc. # 75) at 14 of 20 (no explanation of any basis for his procedural due process claim). Claim Five is properly dismissed for failure to state a claim to which relief can be granted.

E.     Claim Six: Fourteenth Amendment Equal Protection

Mr. Handy alleges that Defendants' actions in denying him treatment for his keratoconus "in the form of sceral lenses or surgery" violated his right to equal protection. (*See* Doc. # 53 at 18 of 27). The Fourteenth Amendment provides that "[n]o State shall make or enforce any law

which shall . . . deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend XIV, § 1.  The fundamental guarantee of the Equal Protection Clause is that "all persons similarly situated shall be treated alike."  *Kerr v. Hickenlooper*, 880 F.Supp.2d 1112, 1155 (D.Colo. 2012) (citation omitted), *cert. granted, judgment vacated, and case remanded on other grounds*, 576 U.S. __, 135 S.Ct. 2927 (2015).  The Equal Protection Clause "does not forbid classifications," but "simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."  *Furling Enterprises, LLC v. Nickerson*, 785 F.Supp.2d 970, 979 (D. Colo. 2011) (citation omitted).

"To state an equal protection claim, a plaintiff must allege: (1) that similarly-situated individuals were treated differently; and (2) either that the differential treatment was based on a suspect classification or fundamental right and not supported by a compelling government interest, or if the differential treatment was not based on a suspect classification or fundamental right, the differential treatment was not justified by a rational connection to a legitimate state interest."  *Haines v. Archuleta*, 2013 WL 6658767, at *5 (D.Colo. Dec. 17, 2013) (citing *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1047 (10th Cir. 2009)).  Mr. Handy states no factual allegations supporting his conclusory claim that his medical treatment violated the equal protection clause.  He does not allege that he belongs to a suspect class or identify any other persons who have been treated differently or explain how they were similarly situated.[1]  His "allegations are merely conclusory in that they do not provide any factual basis for his equal protection claim."  *Deberry v. Davis*, No. 10-cv-00725-CMA-BNB, 2011 WL 1258509, at *4 (D. Colo. Mar. 31, 2011) (citing *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995) ("even pro se litigants must do more than make mere conclusory statements regarding constitutional

---

[1] While he does not allege it, Mr. Handy is African American and a member of a suspect class.  *See Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002) (race is a suspect classification).

claims.")).  *See also Cosco v. Uphoff*, 195 F.3d 1221, 1222 (10th Cir. 1999) (an equal protection

claim is entirely conclusory and without merit where a plaintiff fails to allege facts that he was

treated differently than those similarly situated);  *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th

Cir. 1988) ("In order to assert a viable equal protection claim, [Mr. Handy] must first make a

threshold showing that [he was] treated differently from others who were similarly situated to

[him].").[2]

Nor does Mr. Handy allege that Defendants acted based upon a discriminatory intent or

motive.  *See Frazier v. Ortiz*, No. 07-CV-02131-CMA-KMT, 2010 WL 924254, at *14-15 (D.

Colo. Mar. 10, 2010) ("The challenged disparate treatment must be the result of purposeful

discrimination.") (citation omitted), *aff'd*, 417 F. App'x 768 (10th Cir. 2011);  *Villanueva v. Carere*,

85 F.3d 481, 485 (10th Cir. 1996) (Although "[t]he discriminatory purpose need not be the only

purpose, . . . it must be a motivating factor in the decision");  *Watson v. City of Kansas City,*

*Kansas*, 857 F.2d 690, 694 (10th Cir. 1988) ("A plaintiff in an equal protection action has the

burden of demonstrating discriminatory intent") (citations omitted).  Claim Six is properly

dismissed for failure to state a claim to which relief can be granted.  *See Smith v. DuBoise*, No.

14-CV-511-GKF-PJC, 2015 WL 4666237, at *5 (N.D. Okla. Aug. 6, 2015) (amended complaint

failed to state a claim for violation of the equal protection clause where plaintiff did not claim to

be a member of a suspect class, nor did he allege involvement of a fundamental right, nor did

---

[2]  Mr. Handy argues in his response that "an offender named Eugene Gilbert" received "scleral lenses and/or surgery. . . based on the recommendation of an eye specialist"  (*See* Doc. # 75 at 4, 5, 12 of 20, Doc. # 76 at 16 of 23).  First, there are no allegations in the FAC that any other inmate was similarly situated to him.  "Allegations that do not appear in the pleadings cannot be raised for the first time in a response to a motion to dismiss."  *Bingaman v. Torrez*, No. 12-CV-00400-WJM-CBS, 2012 WL 6762218, at *9 (D. Colo. Nov. 5, 2012) (citations omitted), *report and recommendation adopted*, No. 12-CV-0400-WJM-CBS, 2013 WL 50428 (D. Colo. Jan. 3, 2013).  Second, Mr. Handy's vague and conclusory argument does not raise a plausible inference that Mr. Gilbert was similarly situated.  He provides no information regarding Mr. Gilbert's specific circumstances and acknowledges that, unlike him, Mr. Gilbert is serving a life sentence.  (See Doc. # 76 at 16 of 23, Doc. # 75 at 5, 12 of 20).

he claim that the medical care he received was different from that received by similarly situated prisoners).

F.    Claims Three and Four: Eighth Amendment

In Claims Three and Four, Mr. Handy alleges "deliberate indifference to serious medical needs" and "cruel and unusual punishment" in violation of the Eighth Amendment.  (See Doc. # 53 at 13-16 of 27).  The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. Amend. VIII.  "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).  Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment.  *Whitley v. Albers*, 475 U .S. 312, 319 (1986). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment."  *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976)) (internal quotation marks and citation omitted).

An Eighth Amendment claim involves "a two-pronged inquiry, comprised of an objective component and a subjective component."  *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). *See also Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993) (An Eighth Amendment claim for deliberate indifference to serious medical needs consists of both a subjective component requiring that the Defendants acted with a sufficiently culpable state of mind and an objective component that the pain or deprivation be sufficiently serious.).  "Under the objective inquiry, the alleged deprivation must be sufficiently serious to constitute a deprivation of constitutional dimension."  *Self*, 439 F.3d at 1230 (internal quotation marks and citation omitted).  Mr. Handy's allegations describe a medical condition that the court may recognize as sufficiently serious to

support the objective component of an Eighth Amendment claim. *See, e.g., Harris v. Morales*, No. 05-1225, 231 F. App'x 773, 775, n. 1 (10th Cir. Feb. 2, 2007) (noting that other courts have addressed Eighth Amendment claims for eye injuries) (citations omitted).

Under the subjective inquiry, the defendant must have acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Because only the unnecessary and wanton infliction of pain implicates the Eighth Amendment, in order to state a cognizable claim a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. *Estelle*, 429 U.S. at 104–06. See also *Whitley*, 475 U.S. at 319 ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause."). To meet the subjective component of an Eighth Amendment claim, a plaintiff must establish the defendant "knew he faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.' " *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Farmer*, 511 U.S. at 847). For a prison official to be found liable of deliberate indifference under the Eighth Amendment, "the official must 'know[ ] of and disregard[ ] an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must draw the inference.' " *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 809 (10th Cir. 1999) (quoting *Farmer*, 511 U.S. at 837).

Mr. Handy alleges that he received "various treatments . . .over a decade," including referral to Dr. Williams at the Denver Health Medical Center ("DHMC") on December 18, 2013. (*See* Doc. # 53 at 7-8 of 27). Dr. Williams recommended that he receive scleral lenses and/or surgery as treatment for his keratoconus. (*See id.*). Mr. Handy alleges that these Defendants denied him scleral lenses and/or surgery, depriving him of treatment and accommodation. (*See id.*). His requests to be returned to see Dr. Williams at DHMC were denied by Defendant Tiona

on April 28, 2014. (*See id.* at 8 of 27, Doc. # 73 at 9 of 23). "Defendant Tiona told Plaintiff that CDOC will not pay for the scleral lenses, and that he would have to pay for them himself." (*See* Doc. # 53 at 8 of 27). On May 19, 2014, Dr. Williams responded to correspondence from Mr. Handy, stating that "the scleral lenses that you have received previously are no longer covered by CDOC, due to the increased costs of these lenses." (*See id.*). Mr. Handy alleges that in May of 2014, Defendant Bazar denied his requests, made in an informal resolution form and a Step 1 grievance, seeking scleral lenses or surgery. (See Doc. # 53 at 8 of 27). Mr. Handy alleges that Defendant Andrews did not contact him or respond to a medical kite he submitted on May 16, 2014 in which he complained of not receiving scleral lenses of surgery. (See Doc. # 53 at 8 of 27, Doc. 3 73 at 13 of 23). He alleges that Defendant Wilkerson denied a Step 2 grievance that he submitted on May 27, 2014, in which he complained of not receiving scleral lenses of surgery. (*See* Doc. # 53 at 9 of 27, Doc. 3 73 at 14 of 23). On July 11, 2014, Mr. Handy was transferred from KCCC to CMRC. (*See id.*).

Mr. Handy alleges that upon his transfer to CMRC, he promptly submitted a kite to be seen by CMRC medical staff relating to his keratoconus. (*See* Doc. # 53 at 9 of 27, Doc. # 76 at 9 of 23). Four days after his transfer, he was seen by Defendant Caldwell, who was allegedly "rude and insensitive to Plaintiff's gripe." (*See id.*). He subsequently submitted a kite and a grievance regarding not receiving treatment for his condition and the grievance was denied by Defendant Carnell. (*See id.*). When CHP denied a request for Mr. Handy to again see Dr. Williams at DHMC, Defendant Carnell did not appeal the denial. (*See* Doc. # 76 at 10 of 27).

"Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976). *See also Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) (individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation) (citation omitted); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th

Cir. 1996) (personal participation is an essential allegation in a civil rights action) (citation omitted).  To establish personal participation, Mr. Handy must show that each Defendant caused the deprivation of a federal right.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise.  *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  *See also Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (for § 1983 claim, affirmative link between the defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial").  A supervisory official may not be held liable for the unconstitutional conduct of his or her subordinates on a theory of *respondeat superior.  See Trujillo v. Williams,* 465 F.3d 1210, 1228 (10th Cir. 2006) (There is no respondeat superior liability under § 1983.);  *Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006) (Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates.) (citations omitted).

Mr. Handy's allegations against Defendants Bazar, Andrews, Wilkerson, and Carnell state nothing more than the denial of kites and grievances and are not sufficient to support personal participation in the alleged violations.  To the extent that Mr. Handy's claims against any of the Defendants are based on denial of his kites and grievances, "a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."  *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citations omitted).  *See also Adams v. Wiley*, No. 10–1052, 2010 WL 3995977, * 3 (10th Cir. Oct. 13, 2010) ("denial of a grievance alone does not constitute personal participation in the denial of a constitutional right sufficient to support a . . . claim against these individuals") (internal quotation marks and citation omitted);  *Larson v. Meek*, 240 Fed. App'x.

777, 780 (10th Cir. 2007) ("In the Tenth Circuit, constitutional allegations against an actor whose only involvement was during the grievance process do not state a claim.") (citations omitted). Nor does failure to file an appeal of a surgery denial rise to the level of deliberate indifference. *See Spark v. Rittenhouse*, No. 07-1180, 314 F. App'x 104, 108-09 (10th Cir. Sept. 16, 2008) (even if prison official had authority and obligation to appeal denial of surgery, plaintiff made no showing that when she did not file an appeal of the surgery denial that she knew of and disregarded an excessive risk to his health and safety). Mr. Handy's allegations that Defendants denied his kites and grievances and did not file an appeal of the denial of his request for scleral lenses or surgery are not sufficient to establish their personal participation in a constitutional violation.

Defendants argue that Mr. Handy fails to adequately allege the subjective component of an Eighth Amendment claim: that they knew of and consciously disregarded a substantial risk of serious harm to him. During the time period relevant to his claim against Defendant Tiona, Mr. Handy's own allegations indicate that he was examined by medical personnel, including Defendant Tiona, sent to an eye specialist at DHMC, and approved for contact lenses and eye-glasses. (*See* Doc. # 53 at 8 of 27, Doc. # 75 at 7 of 20). He alleges that Defendant Tiona refused his requests to again be sent to DHMC. (*See id.*). His allegations reveal that while he received treatment for his eye condition, he did not receive the particular treatment he desired as soon as he wanted it. However, "[a] mere difference of opinion between a prisoner and the prison's medical staff with respect to a diagnosis or a plan of treatment, or a mere medical difference of opinion, is not actionable under the Eighth Amendment." *Phillips v. Tiona*, No. 12-1055, 508 F. App'x 737, 746 (10th Cir. Jan 23, 2013) (citations omitted). *Accord Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (finding that inmate's beliefs that he needed additional medication and a consultation with a specialist were differences of opinion and could

18

not form the basis of an Eighth Amendment claim of deliberate indifference); *Wright v. Genovese*, 694 F.Supp.2d 137, 155 (N.D.N.Y.2010) ( "[d]isagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment"); *Franklin v. Kansas Dep't of Corr.*, No. 05-3166, 160 F. App'x 730, 735 (10th Cir. Dec. 23, 2005) (difference of opinion between inmate and prison medical staff about medical treatment does not constitute deliberate indifference) (citation omitted); *Trujillo v. Arce*, No. 04-50040, 109 F. App'x 668, 670 (5th Cir. Sept. 8, 2004) (decision to not refer inmate to a specialist shows only a difference of opinion as to the proper course of treatment); *Berreondo v. Akanno*, No. 1:11-CV-00432-LJO, 2012 WL 2953954, at *2 (E.D. Cal. July 19, 2012) (complaint that defendant did not provide medical care recommended by specialist amounts at most to a difference of opinion between medical professionals, which fails to demonstrate a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment), *report and recommendation adopted*, No. 1:11-CV-00432-LJO, 2012 WL 3585929 (E.D. Cal. Aug. 20, 2012); *Cole v. Goord*, No. 04 Civ. 8906(GEL), 2009 WL 1181295, *6–9 (S .D.N.Y. Apr. 30, 2009) (prison doctor's disagreement with outside specialist about inmate's course of treatment, including the inmate's need for surgery and proper medication, does not establish deliberate indifference).

As to Defendant Caldwell, Mr. Handy was transferred from KCCC to CMRC on July 11, 2014. On July 15, 2014, "Plaintiff was seen by Defendant Caldwell" at his request. (*See* Doc. # 53 at 9 of 27, Doc. # 76 at 9 of 23; Doc. # 75 at 7 of 20). "During the visit, Defendant Caldwell was rude and insensitive to Plaintiff's gripe." (*See id.*). "Defendant Caldwell refused to request that Plaintiff be sent to DHMC to receive treatment for his keratoconus." (*See id.*). These allegations fall far short of plausibly alleging a claim for deliberate indifference against Defendant Caldwell. Mr. Handy's own allegations indicate that he received medical attention for

his eye condition at CMRC, including the submission of a request to CDOC's insurance provider to again be seen by Dr. Williams at DHMC.  (See Doc. # 53 at 9-10 of 27).  Mr. Handy alleges a mere disagreement regarding his desired treatment, which was nevertheless requested by the CEC Defendants.  Mr. Handy's allegations are insufficient to state the subjective component of his Eighth Amendment claim against Defendants Tiona and Caldwell: that they "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."  *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (internal quotation marks and citation omitted).

To the extent that Mr. Handy may be alleging that his Eighth Amendment rights were violated by a delay in receiving the scleral lenses he sought, a "[d]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm."  *McBride v. Deer*, 240 F.3d 1287, 1289 (10th Cir. 2001) (citation omitted).  *See also Estelle*, 429 U.S. at 104–105 (deliberate indifference is manifested by prison personnel "in intentionally denying or delaying access to medical care").  Mr. Handy's own allegations indicate that any delay in treatment resulted from CDOC's failure to pay for the specific treatment Mr. Handy sought.  *See Escobar v. Reid*, 668 F. Supp. 2d 1260, 1277 (D. Colo. 2009) (finding "that any delay in treatment resulted from causes outside of Defendants' domain").  Mr. Handy's allegations are not sufficient to place the responsibility for the delay on Defendants' actions or demonstrate that they acted with deliberate indifference.  *See Plummer v. McDermott*, No. 15-1131, 2015 WL 6075837, at *2 (10th Cir. Oct. 15, 2015) ("A myriad of things could account for the six-month delay between Mr. Plummer's demand for surgery and the operation, yet his allegations are devoid of specifics that would not only place the blame on actions by the defendants but would also demonstrate that they acted with the requisite mens rea.").  The

allegations in Mr. Handy's FAC do not support an Eighth Amendment claim based on delaying access to medical care.

As to Defendants CHP, CCA, and CEC, the Tenth Circuit Court of Appeals has held that traditional municipal liability principles apply to claims brought pursuant to 42 U.S.C. § 1983 against private corporations. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216-1217 (10th Cir. 2003) ("caselaw from this and other circuits has extended the *Monell* doctrine to private § 1983 defendants."); *Smedley v. Corrections Corporation of America*, 175 F. App'x 943, 945-46 (10th Cir. 2005) (applying municipal liability principles to Defendant CCA). A municipality "will not be held liable under § 1983 solely because its employees inflicted injury." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citation omitted). "Rather, to establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged." *Graves*, 450 F.3d at 1218 (citation omitted). "In addition, a municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Id.*

As the court determines that Mr. Handy has not stated the first element of a municipal liability claim: that an employee committed an underlying constitutional violation, he also fails to state a claim against the defendant entities. *See Saenz v. Lovington Mun. Sch. Dist.*, 105 F. Supp. 3d 1271, 1314 (D.N.M. 2015) ("A municipal entity's liability requires an underlying constitutional violation. Without a constitutional violation, the municipal liability claim fails.") (internal quotation marks and citation omitted); *Sanchez v. City of Albuquerque*, No. CIV 12–1161 JB/KBM, 2014 WL 1953499, at *17 (D.N.M. Apr. 30, 2014) ("Because Sanchez has failed to establish that a municipal employee . . . violated his constitutional rights, his municipal liability claim must fail."). Nor has Mr. Handy presented allegations regarding the existence of a custom or policy or a causal link to a violation of his constitutional rights. *See Board of County*

*Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404 (1997) ("[I]t is not enough for a §

1983 Plaintiff merely to identify conduct properly attributable to the municipality.  The Plaintiff

must also demonstrate that, through its *deliberate* conduct, the municipality was the moving

force behind the injury alleged.") (emphasis in original).  Claims Three and Four are properly

dismissed for failure to state a claim to which relief can be granted.


G.      State Law Claims

        The court has determined that all of Mr. Handy's federal law claims are properly

dismissed.  Only state law claims remain.  "A federal court does not have independent

jurisdiction over state law claims unless those state law claims turn on some substantial

questions of federal law."  *Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1262-63

(D. Colo. 2014) (internal quotation marks and citation omitted).  Mr. Handy's remaining claims,

which allege tortious conduct and breach of contract under Colorado law, do not turn on

substantial questions of federal law.  When a "district court has dismissed all claims over which

it had original jurisdiction," the court "may decline to exercise supplemental jurisdiction" over the

remaining state law claims.  28 U.S.C. § 1367(c)(3).  *See also Smith v. City of Enid ex rel. Enid*

*City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been

dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining

state claims.").  "[A] federal court should consider and weigh in each case, and at every stage of

the litigation, the values of judicial economy, convenience, fairness, and comity in order to

decide whether to exercise jurisdiction over a case brought in that court involving pendent state-

law claims."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), *superseded by statute*

*on other grounds*, 28 U.S.C. § 1447(c).  "Notions of comity and federalism demand that a state

court try its own lawsuits, absent compelling reasons to the contrary."  *Thatcher Enters. v.*

*Cache Cty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).  The court recommends that

supplemental jurisdiction be declined over Plaintiff's state law claims and that Claims Seven,

Eight, Nine, Ten, Eleven, Twelve, and Thirteen be dismissed without prejudice.  *See United*

*States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002) (holding that "when a district court

dismisses the federal claims, leaving only the supplemented states claims, the most common

response . . . has been to dismiss the state claim or claims without prejudice.") (internal

quotation marks and citations omitted);  *Handy v. Meyer*, No. 11-CV-00644-WYD-KMT, 2011

WL 7478990, at *14 (D. Colo. Dec. 30, 2011) (finding "it proper to decline to exercise jurisdiction

over both Plaintiff's existing and proposed state law claims" after determining that Mr. Handy's

"existing federal law claims are properly dismissed and that all of Plaintiff's proposed federal law

claims are futile.").


Accordingly, IT IS RECOMMENDED that the Motion to Dismiss filed by Defendants

Tiona, Andrews, Wilkinson, Bazar, Correctional Health Partners, and Corrections Corporation of

America (filed May 22, 2015) (Doc. # 64), the Motion to Dismiss filed by Defendants Caldwell,

Carnell, and Community Education Centers (filed May 22, 2015) (Doc. # 66), and the Motion to

Dismiss filed by Defendant Colorado Department of Corrections (filed May 22, 2015) (Doc. # 67)

be GRANTED and this civil action be dismissed in its entirety as set forth above.


**Advisement to the Parties**

Within **fourteen days** after service of a copy of this Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado this 25th day of January, 2016.

BY THE COURT:

_____s/Craig B. Shaffer_____
United States Magistrate Judge