**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 14-cv-03167-CMA-CBS

WYATT T. HANDY, JR.,

     Plaintiff,

v.

DESIREÉ ANDREWS,
VALERIE BAZAR,
MARY CARNELL,
CORRECTIONAL HEALTH PARTNERS,
COLORADO DEPARTMENT OF CORRECTIONS,
CORRECTIONAL CORPORATION OF AMERICA,
COMMUNITY EDUCATION CENTERS,
DR. SUSAN TIONA,
GREG WILKERSON,
APRIL CALDWELL, and
STATE OF COLORADO,

     Defendants.

---

**ORDER ACCEPTING IN PART AND REJECTING IN PART THE MAGISTRATE
JUDGE'S JANUARY 25, 2016 RECOMMENDATION (DOC. # 86)**

---

Before the Court is Magistrate Judge Craig Shaffer's January 25, 2016

recommendation (Doc. # 86) that the Court: (1) grant the motion to dismiss filed by

Defendants Dr. Susan Tiona, Desiree Andrews, Greg Wilkerson, Valerie Bazar,

Correctional Health Partners ("CHP"), and Correctional Corporation of America ("CCA")

(Doc. # 64); (2) grant the motion to dismiss filed by Defendants April Caldwell, Mary

Carnell, and Community Education Centers ("CEC") (Doc. # 66); and grant the motion

to dismiss filed by Defendants Colorado Department of Corrections ("CDOC") and the

State of Colorado (Doc. # 67). For the reasons that follow, the Court accepts in part

and rejects in part Magistrate Judge Shaffer's recommendation.

## I.  BACKGROUND

Plaintiff Wyatt T. Handy, Jr., a former CDOC inmate, brings this lawsuit seeking

redress for alleged violations of various constitutional and statutory rights. In his First

Amendment Complaint ("FAC"), filed on April 9, 2015, Plaintiff alleges that, in 2003, he

was diagnosed with keratoconus—a degenerative eye disorder that causes distorted

and blurry vision. (Doc. # 53 at 7 ¶¶ 6-7.) Plaintiff alleges that his keratoconus is at

"stage four," which is "the wors[t] stage of the disease" and not correctable or treatable

with glasses or standard rigid gas-permeable contact lenses. (Doc. # 53 at 7 ¶ 10.)

Plaintiff alleges that he was placed in CDOC's custody on August 7, 2013, "to serve the

remainder of his four-year CDOC sentence." (Doc. # 53 at 7 ¶ 4.) Plaintiff alleges that

a "Dr. Williams" at Denver Health Medical Center ("DHMC") "determined that the only

treatment of Plaintiff's stage 4 keratoconus is scleral lenses [a special type of rigid gas-

permeable contact lenses] and/or surgery." (Doc. # 53 at 7-8 ¶ 11.) Plaintiff alleges

that Defendants "were aware . . . from Plaintiff's medical records" of Dr. Williams'

determination that the only effective treatment for Plaintiff's stage 4 keratoconus is

scleral lenses and/or surgery. (Doc. # 53 at 8 ¶ 11.)

On December 16, 2013, "Plaintiff was approved for contact lenses and

eyeglasses," and on December 18, 2013, "Plaintiff was sent to [DHMC] to see Dr.

2

Williams, after months of complaining about his pain and suffering and lack of treatment." (Doc. # 53 at 8 ¶¶ 13-14.)

On April 23, 2014, "Plaintiff submitted a kite to [Kit Carson Correctional Center ("KCCC")] medical [where he was incarcerated at the time], requesting to be returned to DHMC, related to not receiving his scleral lenses, and experiencing severe headaches, blurriness, loss of vision, etc., due to lack of treatment." (Doc. # 53 at 8 ¶ 16.) On April 28, 2014, Defendant Dr. Susan Tiona at KCCC, who was employed by CCA, "denied Plaintiff's request related to the 4-23-14 kite to be treated and accommodated." (Doc. # 53 at 8 ¶ 17.) Plaintiff alleges that "Defendant Tiona told Plaintiff that CDOC will not pay for the scleral lenses, and that he would have to pay for them himself." (Doc. # 53 at 8 ¶ 17.)

On or around May 4, 2014, Defendant Valerie Bazar, a registered nurse at KCCC and an employee of CCA, denied Plaintiff's "informal resolution form complaining about not receiving scleral lenses or surgery to treat his keratoconus." (Doc. # 53 at 8 ¶ 19.) On or around May 16, 2014, Bazar denied Plaintiff's "step 1 grievance complaining about not receiving scleral lenses or surgery, and experiencing severe headaches, blurriness, loss of vision, etc." (Doc. # 53 at 8 ¶ 20.) According to Plaintiff, Defendant Bazar stated in both denials that "CDOC will not pay for the scleral lenses anymore." (Doc. # 53 at 8 ¶ 21.)

Also on May 16, 2014, Plaintiff "submitted a medical kite to [Defendant Desiree] Andrews [the Health Services Administrator at KCCC and an employee CCA], complaining about not receiving scleral lenses or surgery, and experiencing severe

headaches, blurriness, loss of vision, etc. . . . Defendant Andrews did not contact Plaintiff, although she was aware of the issues, and the symptoms Plaintiff was experiencing from not receiving any treatment."  (Doc. # 53 at 8-9 ¶ 22.)

On or around May 27, 2014, Defendant Greg Wilkerson, the assistant warden at KCCC and an employee of CCA, denied Plaintiff's "step 2 grievance, complaining about not receiving scleral lenses or surgery to treat his keratoconus, and the severe symptoms he was experiencing."  (Doc. # 53 at 9 ¶ 25.)  In addition, Plaintiff alleges that Defendant Wilkerson "intercepted" the grievances that Plaintiff submitted to Defendant Bazar "to perpetuate and cover up the misconduct."  (Doc. # 53 at 9 ¶ 26.)

On July 11, 2014, Plaintiff was transferred from KCCC to Cheyenne Mountain Re-Entry Center ("CMRC").  On July 15, 2014, Plaintiff was seen by Defendant April Caldwell, an employee of CEC, who was allegedly "rude and insensitive to Plaintiff's gripe."  (Doc. # 53 at 9 ¶ 32.)  In addition, "Defendant Caldwell refused to request that Plaintiff be sent to DHMC to receive treatment for his keratoconus."  (Doc. # 53 at 9 ¶ 32.)

On August 26, 2014, Defendant Mary Carnell, the Americans with Disabilities Act ("ADA") coordinator at CMRC and an employee of CEC, denied Plaintiff's "step 1 grievance complaining about not receiving scleral lenses or surgery, and experiencing severe headaches, blurriness, loss of vision, etc., related to not receiving any treatment."  (Doc. # 53 at 9 ¶ 34.)  Defendant Carnell allegedly stated that "CDOC insurance provider CHP will not pay for the treatment."  (Doc. # 53 at 9 ¶ 34.)  On or around September 2, 2014, and September 10, 2014, Defendant Carnell denied

4

Plaintiff's additional requests for treatment.  (Doc. # 53 at 9 ¶¶ 35-36.)  According to

Plaintiff's FAC, "Defendant Carnell promised if CHP denied [Plaintiff's] request [to visit

Dr. Williams at DHMC], that she would appeal, however, after CHP denied the request

to treat Plaintiff's keratoconus, Defendant Carnell failed to appeal the decision."  (Doc. #

53 at 10 ¶ 37.)

On November 21, 2014, Plaintiff initiated this litigation.  (Doc. # 1.)  In January

2015, Plaintiff received the scleral lenses that he had requested.  (Doc. # 73 at 10.)

Plaintiff was paroled from CDOC's custody in October 2015.  (Doc. # 85.)

In his FAC, Plaintiff asserts the following claims: a violation of Title II of the ADA

(claim one); a violation of section 504 of the Rehabilitation Act (claim two); a violation of

the Eight Amendment to the United States Constitution (claims three and four); a

violation of the Fourteenth Amendment to the United States Constitution (claims five

and six); negligence (claim seven); medical malpractice (claim eight); negligent

supervision (claim nine); respondeat superior (claim ten); intentional infliction of

emotional distress (claim eleven); negligent infliction of emotional distress (claim

twelve); and breach of contract (claim thirteen).  (Doc. # 53.)

Plaintiff seeks the following relief: (1) "appropriate declaratory and other

injunctive and/or equitable relief as to each Defendant in their individual and official

capacity"; (2) "compensatory and consequential damages, including damages for

emotional distress, mental anguish, humiliation, and other pain and suffering on all

claims allowed by law and in an amount to be determined at trial from all defendants

named in their individual and official capacities"; (3) "punitive damages on all claims

allowed by law and in an amount to be determined at trial from all defendants named in

their individual and official capacities"; (4) "a trial by jury"; (5) "pre- and post-judgment

interest at the lawful rate"; and (6) "any further relief the Court deems just, proper, and

equitable."  (Doc. # 53 at 27.)

In response, all Defendants have moved to dismiss Plaintiff's FAC.  (Doc. ## 64,

66, 67.)  The Court referred those motions to Magistrate Judge Shaffer for a

recommended disposition.  (Doc. # 69.)  Magistrate Judge Shaffer issued his

recommendation on January 25, 2016.  (Doc. # 86.)  Plaintiff filed a timely objection to

Magistrate Judge Shaffer's recommendation on February 8, 2016.  (Doc. # 87.)  All

Defendants responded to Plaintiff's objection.  (Doc. ## 88, 89, 90.)  Plaintiff replied to

Defendants' responses.  (Doc. ## 91, 92, 94.)

## II.   ANALYSIS

"The district judge must determine de novo any part of the magistrate judge's

disposition that has been properly objected to.  The district judge may accept, reject, or

modify the recommended disposition; receive further evidence; or return the matter to

the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

Federal Rule of Civil Procedure 12(b)(1) provides that a complaint may be

dismissed for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Dismissal

under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's claims.  Instead, it is

a determination that the court lacks authority to adjudicate the matter.  *See Castaneda*

*v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing that federal courts are courts

of limited jurisdiction and may only exercise jurisdiction when specifically authorized to

do so).  The burden of establishing subject-matter jurisdiction is on the party asserting

jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be

dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must

set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl.

Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  When ruling on a motion to dismiss, the

court must accept as true the factual allegations contained in the complaint, but it may

not rely on mere conclusions.  *Id*. at 555.  In addition, a pro se litigant's pleadings must

be "construed liberally and held to a less stringent standard than formal pleadings

drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, it

is not the "proper function of the district court to assume the role of advocate for the pro

se litigant."  *Id*.

### A.    Claims One and Two (ADA and Rehabilitation Act)

Plaintiff alleges violations of Title II of the ADA and section 504 of the

Rehabilitation Act in claims one and two of his FAC.  Title II of the ADA provides that

"no qualified individual with a disability shall, by reason of such disability, be excluded

from participation in or be denied the benefits of the services, programs, or activities of

a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

"To state a claim under Title II, the plaintiff must allege that (1) he is a qualified

individual with a disability, (2) who was excluded from participation in or denied the

benefits of a public entity's services, programs, or activities, and (3) such exclusion,

7

denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007).  Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a).  To state a claim for disability discrimination under the Rehabilitation Act, a plaintiff must prove the same elements required to prevail under Title II of the ADA.  *Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 608 n.7 (10th Cir. 1998).

As an initial matter, the Court notes that Plaintiff concedes in his objection to Magistrate Judge Shaffer's recommendation that his ADA and Rehabilitation Act claims should be dismissed as to the "individual Defendants in their individual capacities because neither the ADA nor the Rehabilitation Act creates liability against individuals who do not otherwise qualify as employers under the statutory definition." (Doc. # 87 at 6.)  In addition, Plaintiff agrees that his ADA and Rehabilitation Act claims should be dismissed as to Defendants CCA, CEC, and CHP because "these are private corporations and the Tenth Circuit has held 'that Title II of the ADA does not generally apply to private corporations that operate prisons.'" (Doc. # 87 at 6 (quoting *Phillips v. Tiona*, No. 12-1055, 508 F. App'x 737, 754 (10th Cir. 2013)).)  Thus, Plaintiff's ADA and Rehabilitation Act claims against all individual Defendants and Defendants CCA, CEC, and CHP are properly dismissed with prejudice.

8

The issue remains, however, whether Plaintiff's ADA and Rehabilitation Act claims should be dismissed as to Defendants CDOC and the State of Colorado.  Before addressing the merits of Plaintiff's ADA and Rehabilitation Act claims, it is necessary to consider whether this Court even has subject-matter jurisdiction over those claims.

The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."  U.S. CONST. amend. XI. The Eleventh Amendment has been interpreted to also bar suits in federal court by a citizen against his or her own state.  *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).  Relying on Eleventh Amendment immunity, Magistrate Judge Shaffer concluded in his recommendation that, "[t]o the extent that [Plaintiff] is suing Defendants CDOC [and] the State of Colorado . . . for money damages, such claim is properly dismissed without prejudice for lack of subject matter jurisdiction."  (Doc. # 86 at 5.)  Plaintiff concedes that "Defendants CDOC and the State of Colorado are immune from suit for money damages in federal court."  (Doc. # 87 at 3.)  However, citing *Ex Parte Young*, 209 U.S. 123 (1908), Plaintiff argues that "[t]he Eleventh Amendment does not bar suing state official[s] for damages in their individual capacities, and for declaratory or injunctive relief in their official capacities."  (Doc. # 87 at 3.)  Plaintiff's reliance on *Ex Parte Young* is misguided, however, because Plaintiff does not bring suit against any state officials in either their individual or official capacities.

Plaintiff also cites *United States v. Georgia*, 546 U.S. 151 (2006), to support his assertion that "Congress has abrogated the states['] Eleventh Amendment immunity at least in part, in the [ADA]."  (Doc. # 87 at 3.)  Again, however, Plaintiff's argument is incorrect.

In *United States v. Georgia*, the Supreme Court held that Title II of the ADA validly abrogates state sovereign immunity "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment."  *Id*. at 159.  The Supreme Court in *United States v. Georgia* set forth the following three-part test to determine "on a claim-by-claim basis" whether Title II validly abrogates Eleventh Amendment immunity: "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid."  *Id*.  *See also Guttman v. Khalsa*, 669 F.3d 1101, 1111-25 (10th Cir. 2012) (using the three-part test to determine whether Title II validly abrogated New Mexico's sovereign immunity in the context of professional licensing).

Plaintiff cannot clear the first hurdle of this three-part test because the facts as alleged do not set forth a violation of Title II of the ADA.  As discussed above, to state a claim under Title II, the plaintiff must allege, in part, that he or she was denied the benefits of a public entity's program and that such denial was "by reason of a disability."  *Robertson*, 500 F.3d at 1193.  Plaintiff does not allege that he was denied the benefits

of the medical services program *because of* his disability.  Instead, Plaintiff alleges that

Defendants "refuse[d] and/or delay[ed] medical care and treatment for Plaintiff's

keratoconus *due to budgetary costs and concerns*."  (Doc. # 87 at 5 (emphasis added).)

Thus, Plaintiff fails to satisfy Title II's requirement that he was denied benefits "solely by

reason of disability."  *See, e.g.*, *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144

(10th Cir. 2005).  Plaintiff's claim under the Rehabilitation Act fails for this same reason.

*See, e.g.*, *id.* ("Under either the ADA or the Rehabilitation Act, [the plaintiff] is obligated

to show that he was 'otherwise qualified' for the benefits he sought and that he was

denied those 'solely by reason of disability.'").  Therefore, the facts as alleged do not

support a finding that Title II of the ADA validly abrogates Colorado's Eleventh

Amendment immunity in the present matter.  Thus, the Court lacks subject-matter

jurisdiction over Plaintiff's ADA and Rehabilitation Act claims, and those claims are

properly dismissed without prejudice pursuant to Federal Rule of Civil Procedure

12(b)(1).  *Garman v. Campbell Cty. Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2010)

("Generally, a dismissal for lack of subject matter jurisdiction is without prejudice.").

> **B.**    **Claims Three and Four (Eight Amendment)**

Plaintiff alleges in claims three and four "deliberate indifference to serious

medical needs" and "cruel and unusual punishment" in violation of the Eighth

Amendment to the United States Constitution.  The Eighth Amendment prohibits the

infliction of "cruel and unusual punishments."  U.S. CONST. amend. VIII.  The Supreme

Court has interpreted "cruel and unusual punishments" to include "the unnecessary and

wanton infliction of pain" caused by "deliberate indifference to serious medical needs of

11

prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Thus, Plaintiff's claims three

and four are in fact a single deliberate indifference claim brought under the Eighth

Amendment pursuant to 42 U.S.C. § 1983.  Plaintiff's claim four is properly dismissed

as duplicative.

The Supreme Court has set forth a two-pronged inquiry applicable to deliberate

indifference claims, which includes an objective and a subjective component.  *See Self

v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).  "Under the objective inquiry, the alleged

deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional

dimension."  *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1970)).  "[U]nder the

subjective inquiry, the prison official must have a 'sufficiently culpable state of mind.'"

*Id*. at 1230-31 (quoting *Farmer*, 511 U.S. at 834).  Under the subjective component, a

prison official cannot be liable "unless the official knows of and disregards an excessive

risk to inmate health or safety; the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must

also draw the inference."  *Farmer*, 511 U.S. at 837.  "Deliberate indifference to serious

medical needs is shown when prison officials have prevented an inmate from receiving

recommended treatment or when an inmate is denied access to medical personnel

capable of evaluating the need for treatment."  *Ramos v. Lamm*, 639 F.2d 559, 575

(1980).

"[T]he denial of medical care, when based on non-medical factors, may violate

the Eighth Amendment."  *Winslow v. Prison Health Servs.*, 406 Fed. Appx. 671, 674

(10th Cir. 2011).  Cost may be an "improper motive" for the delay or denial of treatment.

*See, e.g.*, *Hanna v. Corr. Corp. of Am.*, 95 Fed. Appx. 531, 532 (5th Cir. 2004) ("The denial or delay of necessary medical treatment for financial or other improper motives not based on medical reasons may constitute an Eighth Amendment violation.").

However, "cost-cutting alone is not a constitutional violation." *Snead v. Mohr*, 12-cv-739, 2015 WL 1208304, at *3 (S.D. Ohio Mar. 16, 2015). The cost of a particular course of treatment is a "legitimate consideration" when a prison official is deciding whether to approve or deny an inmate's request for a particular type of medical care. *See, e.g.*, *Watson v. GEO Corp.*, 07-cv-1320, 2009 WL 223368, at *6 (W.D. Okla. Jan. 29, 2009) (citing *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)); *see also Nasious v. Colorado – Office of Governor Ritter*, 09-cv-1051, 2011 WL 2601005, at *10 (D. Colo. Apr. 22, 2011), *adopted in part and rejected in part*, 2011 WL 2601015 (D. Colo. June 29, 2011) ("[A] prisoner is not constitutionally entitled to unlimited medical care without regard to cost."). However, an expensive course of treatment may be denied only if the inmate is nevertheless provided "adequate medical care." *See, e.g.*, *Watson*, 2009 WL 223368, at *6 ("[T]he constitution permits officials to decline certain kinds of expensive treatment if they provide adequate medical care."); *Nasious*, 2011 WL 2601005, at *10 ("[T]he constitution permits officials to decline certain kinds of expensive treatment so long as they provide adequate medical care.").

Thus, in order to survive a motion to dismiss, a plaintiff must allege facts sufficient to show that the less-expensive treatment that he received was "unreasonable or inadequate." *Nasious*, 2011 WL 2601005, at *10. In addition, the plaintiff must allege that the defendant "performed a medical procedure for the purposes of cost

savings *with knowledge that the procedure was ineffective*."  *Snead*, 2015 WL 1208304, at *3 (emphasis in original) (quotation marks and citation omitted).

With these legal standards in mind, the Court reviews the factual allegation contained in Plaintiff's FAC.  At its core, Plaintiff's claim is that his requests for scleral lenses or surgery were denied solely because of cost and that the treatment he did receive—contact lenses and eyeglasses—was inadequate.  However, to survive Defendants' motions to dismiss, Plaintiff must allege facts sufficient to show that each Defendant denied his request for scleral lenses or surgery because of cost while knowing that the contact lenses and eyeglasses were ineffective.

With regard to Defendant Tiona, according to Plaintiff's FAC, on or around April 28, 2014, "Defendant Tiona denied Plaintiff's request . . . to be treated and accommodated [for his keratoconus].  Defendant Tiona told Plaintiff that CDOC will not pay for the scleral lenses, and that he would have to pay for them himself."  (Doc. # 53 at 8 ¶ 17.)  Plaintiff alleges that Defendant Tiona was aware from Plaintiff's medical records that Dr. Williams had previously determined that the only treatment for Plaintiff's stage 4 keratoconus was scleral lenses or surgery.  (Doc. # 53 at 8 ¶ 11.)

With regard to Defendant Bazar, according to Plaintiff's FAC, on or around May 4, 2014, Defendant Bazar denied Plaintiff's "informal resolution form complaining about not receiving scleral lenses or surgery to treat his keratoconus" and, on or around May 16, 2014, Defendant Bazar denied Plaintiff's "step 1 grievance complaining about not receiving scleral lenses or surgery, and experiencing severe headaches, blurriness, loss of vision, etc."  (Doc. # 53 at 8 ¶¶ 19-20.)  In both denials, Defendant Bazar stated that

14

"CDOC will not pay for the scleral lenses anymore."  (Doc. # 53 at 8 ¶ 21.)  Plaintiff alleges that Defendant Bazar was aware from Plaintiff's medical records that Dr. Williams had previously determined that the only treatment for Plaintiff's stage 4 keratoconus was scleral lenses or surgery.  (Doc. # 53 at 8 ¶ 11.)

With regard to Defendant Carnell, according to Plaintiff's FAC, on or around August 26, 2014, Defendant Carnell denied Plaintiff's "step 1 grievance complaining about not receiving scleral lenses or surgery, and experiencing severe headaches, blurriness, loss of vision, etc., related to not receiving any treatment."  (Doc. # 53 at 9 ¶ 34.)  Defendant Carnell allegedly stated that "CDOC insurance provider CHP will not pay for the treatment."  (Doc. # 53 at 9 ¶ 34.)  Plaintiff alleges that Defendant Carnell was aware from Plaintiff's medical records that Dr. Williams had previously determined that the only treatment for Plaintiff's stage 4 keratoconus was scleral lenses or surgery. (Doc. # 53 at 8 ¶ 11.)

Thus, the Court finds that with regard to Defendants Tiona, Bazar, and Carnell, Plaintiff has alleged that each denied Plaintiff's requests for scleral lenses or surgery explicitly because of cost while knowing that contact lenses and eyeglasses were ineffective.  While the facts, when ultimately discovered, may not support Plaintiff's allegations, at this stage of the litigation, the Court must accept as true the allegations set forth in Plaintiff's FAC and construe Plaintiff's complaint liberally because he is proceeding pro so.  Therefore, the Court finds that Plaintiff has set forth facts sufficient

to satisfy both the objective[1] and subjective elements of an Eighth Amendment claim against Defendants Tiona, Bazar, and Carnell.

However, the Court finds that Plaintiff fails to allege facts sufficient to support an Eighth Amendment claim against Defendants Andrews, Wilkerson, and Caldwell.  With regard to Defendant Andrews, Plaintiff's FAC simply alleges that she "did not contact Plaintiff" after he "submitted a medical kite to [her]."  (Doc. # 53 at 8-9 ¶ 22.)  This is insufficient to state an Eighth Amendment claim because there is no allegation regarding Defendant Andrews' state of mind.  With regard to Defendant Wilkerson, Plaintiff alleges that Defendant Wilkerson denied Plaintiff's "step 2 grievance" and "intercepted" the grievances that Plaintiff had submitted to Defendant Bazar.  (Doc. # 53 at 9 ¶¶ 25-26.)  This is insufficient to state an Eighth Amendment claim because there is no allegation regarding Defendant Wilkerson's state of mind and the allegation that he "intercepted" the grievances submitted to Defendant Bazar is implausible on its face. Lastly, with regard to Defendant Caldwell, Plaintiff alleges that she was "rude and insensitive" and "refused to request that Plaintiff be sent to DHMC to receive treatment for his keratoconus."  (Doc. # 53 at 9 ¶ 32.)  This is insufficient to state an Eighth Amendment claim because there is no allegation regarding Defendant Caldwell's state of mind.

---

[1] For purposes of their motion to dismiss, Defendants Tiona and Bazar "assume Plaintiff's vision issue[ ] constitutes a serious medical need sufficient to meet the objective requirement of the Eighth Amendment."  (Doc. # 64 at 9.)  Defendant Carnell does not argue that Plaintiff's allegations fail to satisfy the objective requirement of the Eighth Amendment.  (Doc. # 66.)

16

The Court next addresses the sufficiency of Plaintiff's Eighth Amendment claims with regard to the entities named as defendants.  Defendants CCA and CHP argue in their motion to dismiss that "[n]o non-conclusory allegations exists [sic] the existence or absence of any particular policy of CCA or CHP [that] caused any violation of Plaintiff's constitutional rights."  (Doc. # 64 at 13.)    In addition, Defendants CCA and CHP argue that "no non-conclusory allegations exist [that] anyone who can be considered a final policymaker from CCA or CHP took any action or failed to take any action that caused a violation of Plaintiff's Eighth Amendment rights."  (Doc. # 64 at 13.)  Lastly, Defendants CCA and CHP argue that Plaintiff "simply lacks any basis to hold CCA and CHP directly liable for any alleged violation of his constitutional rights under the applicable *Monell* [sic] legal framework."  (Doc. # 64 at 13.)  Defendant CEC argues in its motion to dismiss that "Plaintiff has not provided any allegations concerning an unconstitutional custom, practice, or policy of Defendant CEC that he claims caused a constitutional violation."  (Doc. # 66 at 11.)

The Tenth Circuit has extended the doctrine set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), to private defendants being sued under 42 U.S.C. § 1983.  *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003).  In *Monell*, the Supreme Court held that a municipality cannot be held liable under 42 U.S.C. § 1983 merely on account of the unauthorized acts of its agents.  To be liable, the municipality must have had an "official municipal policy of some nature" that was the "direct cause" or "moving force" behind the constitutional violations.  *Monell*, 436 U.S. at 690, 694.

The alleged constitutional violation at issue in this case is Defendants Tiona, Bazar, and Carnell's alleged refusal to provide Plaintiff with certain medical care due to cost despite allegedly knowing that the treatment Plaintiff was receiving was ineffective. To state a claim against CCA, CHP, and CEC for *Monell* liability, Plaintiff must allege sufficient facts to either show or support the reasonable conclusion that CCA, CHP, and CEC had official policies that were the "direct cause" of or "moving force" behind the alleged constitutional violation.  *Monell*, 436 U.S. at 690, 694.

Plaintiff's only factual allegation with regard to Defendant CHP is the following: "On 8-1-14, CHP denied Plaintiff's request for a visit with Dr. Williams and said that scleral lenses are not a covered benefit."  (Doc. # 53 at 10 ¶ 37.)  Nevertheless, this is sufficient, at this stage of the litigation, to state a claim for *Monell* liability.  Whether or not CHP's insurance policy permitted Plaintiff to see Dr. Williams or receive scleral lenses may be indicative of an "official policy" of CHP, and such policy could certainly be considered the "direct cause" of or "moving force" behind the denial of Plaintiff's requests.  The Court also believes that the facts as alleged by Plaintiff support the reasonable conclusion that an "official policy" at both CCA and CEC was a "direct cause" of or "moving force" behind the alleged constitutional violation.  For example, Plaintiff alleges that he was told by multiple employees of CCA and CEC that he could not receive scleral lenses or surgery because of cost.  It is reasonable to conclude that these employees denied Plaintiff's requests because they were following the policy of their respective employers.  Therefore, Plaintiff has sufficiently stated an Eighth Amendment claim against Defendants CHP, CCA, and CEC.

Lastly, with regard to Defendants CDOC and the State of Colorado, Defendant concedes that his Eighth Amendment claim fails because of sovereign immunity.  (Doc. # 87 at 3.)

### C.    Claims Five and Six (Fourteenth Amendment)

In his objection, Plaintiff states that he "has no objections to Magistrate Judge Shaffer's recommendation with respect to the Fourteenth Amendment Procedural and Substantive Due Process claims being dismissed against the Defendants."  (Doc. # 87 at 7.)  In addition, Plaintiff states that he "has no objections to Magistrate Judge Shaffer's recommendation with respect to the Fourteenth Amendment Equal Protection claim being dismissed against the Defendants."  (Doc. # 87 at 7.)

### D.    Claims Seven and Eight (Negligence and Medical Malpractice)

Plaintiff explicitly states that his negligence and medical malpractice claims are "being leveled against all Defendants in their individual and official capacities as employees and correctional officers of the Correctional Corporation of America, Community Education Centers, and CDOC."  (Doc. # 53 at 19, 20 ¶¶ 118, 126.)  In support of his negligence claim, Plaintiff asserts the following:

> Defendants [had] a legally imposed duty or a standard of
> conduct that they failed to adhere to.  Defendants
> disregarded Plaintiff's rights and fundamental protections of
> the Americans with Disabilities Act, Rehabilitation Act, and
> fundamental protections of the Eighth and Fourteenth
> Amendments.  Defendants Tiona, Andrews, Bazar,
> [Wilkerson], Caldwell, Carnell, and Correctional Health
> Partners' failure to accommodate and treat Plaintiff's
> keratoconus, in the form of scleral lenses or surgery, based
> on non-medical grounds, e.g., cost and/or budgetary
> reasons, is negligent.  Defendants, as described above,

> [were] acting recklessly, knowingly, intentionally, willfully,
> and wantonly [and] caused Plaintiff's injuries.

(Doc. # 53 at 19 ¶¶ 120-23.)  In support of his claim for medical malpractice, Plaintiff

asserts the following:

> Defendants Tiona, Andrews, Bazar, [Wilkerson], Caldwell,
> Carnell, and Correctional Health Partners' failure to
> accommodate and treat Plaintiff's keratoconus, in the form of
> scleral lenses or surgery, based on non-medical grounds,
> e.g., cost and/or budgetary reasons, caused Plaintiff's
> injuries, by failing to have and use the knowledge, skill, and
> care ordinarily possessed and employed by members of
> their professions in good standing.  Defendants, as
> described above, . . . acting recklessly, knowingly,
> intentionally, willfully, and wantonly, caused Plaintiff's
> injuries.

(Doc. # 53 at 20 ¶¶ 128-29.)

In their motions to dismiss, Defendants Tiona, Andrews, Wilkerson, Bazar, CHP,

CCA, Caldwell, Carnell, and CEC argue that Plaintiff's negligence and medical

malpractice claims should be dismissed as to all licensed professionals because

Plaintiff has failed to file a certificate of review as required by Colo. Rev. Stat. § 13-20-

602.  That statute provides that "[i]n every action for damages . . . based upon the

alleged professional negligence of . . . a licensed professional, the plaintiff's . . . attorney

shall file with the court a certificate of review for each . . . licensed professional named

as a party . . . within sixty days after the service of the complaint."  Colo. Rev. Stat. §

13-20-602(1)(a).  The statute further provides that "[t]he failure to file a certificate of

review in accordance with this section shall result in the dismissal of the complaint ."

Colo. Rev. Stat. § 13-20-602(4).

20

Plaintiff has not filed a certificate of review.  Therefore, his negligence and medical malpractice claims should be dismissed without prejudice as to Defendants Tiona (a doctor) and Defendant Bazar (a registered nurse).[2]  In addition, Plaintiff's medical malpractice claim fails as to all non-medical professionals, namely Defendants Andrews, Wilkerson, CHP, CCA, Caldwell, Carnell, and CEC.  With regard to Defendants CDOC and the State of Colorado, all of Plaintiff's state law tort claims are properly dismissed with prejudice pursuant to the Colorado Governmental Immunity Act. Colo. Rev. Stat. § 24-10-105.  Thus, Plaintiff's medical malpractice claim (claim eight) is properly dismissed in its entirety as to all defendants.

The only remaining question with regard to Plaintiff's negligence claim (claim seven) is whether it should be dismissed as to Defendants Andrews, Wilkerson, CHP, CCA, Caldwell, Carnell, and CEC.  "The elements of a negligence claim consist of the existence of a legal duty by the defendant to the plaintiff, breach of that duty by the defendant, injury to the Plaintiff, and a sufficient causal relationship between the defendant's breach and the plaintiff's injuries."  *Connes v. Molalla Transport. Sys., Inc.*, 831 P.2d 1316, 1320 (Colo. 1992) (en banc).

In their motion to dismiss, Defendants Andrews, Wilkerson, CHP, and CCA argue that "Plaintiff can point to no duty owed by any of the Defendants that would require them to provide Plaintiff with medical eyeglasses or surgery."  (Doc. # 64 at 19.)  In

---

[2] Defendants' briefing does not specify which individual Defendants are considered "licensed professionals" for purposes of Colo. Rev. Stat. § 13-20-602.  Based upon the Court's own review of the record, it can only identify Defendants Tiona and Bazar as "licensed professionals."  *See State v. Nieto*, 993 P.2d 493, 504 (Colo. 2000) (finding that Plaintiff was required to file a certificate of review for professional negligence claim against a registered nurse).

addition, Defendants Andrews, Wilkerson, CHP, and CCA argue that, "[i]f Plaintiff contends that the duty owed by Defendants is a legal duty to provide him with adequate medical care, this duty would only apply to the medical professionals and could not stand, as Plaintiff has not filed a certificate of review as required by Colorado state law." (Doc. # 64 at 19.)  Defendants cite no case law in support of their argument.

In their motion to dismiss, Defendants Caldwell, Carnell, and CEC argue that Plaintiff's negligence claim "fails to allege the existence of a legal duty, the breach of such duty, or the causation of damages by any such breach."  (Doc. # 66 at 15.)  In support of their argument, Defendants Caldwell, Carnell, and CEC assert that, with regard to the CEC Defendants, Plaintiff's allegations only establish that "a request for Plaintiff to see Dr. Williams was made but denied by parties or entities other than CEC Defendants."  (Doc. # 66 at 15.)

The first issue to address is whether the duty to provide adequate medical care to prisoners applies only to medical professionals, as Defendants Andrews, Wilkerson, CHP, and CCA contend.  As stated above, Defendants Andrews, Wilkerson, CHP, and CCA argue that, as non-medical professionals, they did not have a duty to provide Plaintiff with adequate medical care.  However, Defendants do not cite any case law in support of this argument, and the Court has found none.  Therefore, the Court rejects this argument as unfounded.  In addition, the Court finds it unlikely that the duty to provide medical care would be so narrowly drawn.  It certainly seems reasonable to require non-medical prison staff to facilitate a prisoner's access to necessary medical care.  Thus, Defendants Andrews, Wilkerson, CHP, and CCA have failed to

demonstrate why Plaintiff's negligence claim (claim seven) should be dismissed as to them.

Likewise, the Court rejects the argument of Defendants Caldwell, Carnell, and CEC because it ignores a significant portion of Plaintiff's factual allegations. Specifically, Defendants Caldwell, Carnell, and CEC state that Plaintiff's allegations only establish that "a request for Plaintiff to see Dr. Williams was made but denied by parties or entities other than CEC Defendants." (Doc. # 66 at 15.)  However, a review of the FAC clearly demonstrates that Plaintiff alleges that Defendant Carnell denied his "step 1 grievance complaining about not receiving scleral lenses or surgery, and experiencing severe headaches, blurriness, loss of vision, etc., related to not receiving any treatment." (Doc. # 53 at 9 ¶ 34.)  Plaintiff alleges that Defendant Carnell stated that "CDOC insurance provider CHP will not pay for the treatment." (Doc. # 53 at 9 ¶ 34.)  In addition, Plaintiff alleges that Defendant Caldwell "refused to request that Plaintiff be sent to DHMC to receive treatment for his keratoconus." (Doc. # 53 at 9 ¶ 32.) Therefore, it is proper to deny Defendants Caldwell, Carnell, and CEC's motion to dismiss with respect to Plaintiff's negligence claim.

### E.     Claim Nine (Negligent Supervision)

Plaintiff explicitly states that his claim for negligent supervision is "being leveled against all Defendants in their individual and official capacities as employees and correctional officers of the Correctional Corporation of America, Community Education Centers, and CDOC." (Doc. # 53 at 21 ¶ 132.)  Plaintiff further states,

> Defendants Tiona, Andrews, Bazar, [Wilkerson], Caldwell,
> Carnell, Correctional Health Partners, CCA, CEC, and

> CDOC[, for their] failure to accommodate and treat Plaintiff's
> keratoconus, in the form of scleral lenses or surgery, based
> on non-medical grounds, e.g., cost and/or budgetary
> reasons, can be liable for damages, for the wrongful actions
> of the defendants.  Due to the aforementioned supervisory
> Defendants['] failure to supervise and correct the misconduct
> of subordinates, the underling Defendants engaged in the
> above misconduct, knowing they would not be disciplined.

(Doc. # 53 at 21 ¶¶ 134-35.)

In Colorado, "[a]n employer may . . . be subject to liability for negligent supervision if he knows or should have known that an employee's conduct would subject third parties to an unreasonable risk of harm."  *Moses v. Diocese of Colo.*, 863 P.2d 310, 329 (Colo. 1993) (en banc) (internal quotation marks and citation omitted). Plaintiff's conclusory allegations fail to state a claim for negligent supervision because he does not provide any allegations specifically regarding the supervisory responsibilities of any of the Defendants, nor does Plaintiff allege specific facts regarding any supervisor's knowledge of any employee's conduct.  Therefore, Plaintiff's negligent supervision claim is properly dismissed without prejudice as to all Defendants. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) ("[O]rdinarily the dismissal of a pro se claim under 12(b)(6) should be without prejudice.").

### F.    Claim Ten (Respondeat Superior)

Plaintiff's respondeat superior claim is identical to his claim for negligent supervision, and it is properly dismissed for the reasons cited above.

### G.   Claims Eleven and Twelve (Intentional and Negligent Infliction of Emotion Distress)

Plaintiff states that claims eleven and twelve are "being leveled against all Defendants in their individual and official capacities as employees and correctional officers of the Correctional Corporation of America, Community Education Centers, and CDOC."  (Doc. # 53 at 23 ¶ 146, 24 ¶ 152.)  In support of his claim for intentional infliction of emotional distress, Plaintiff states that "Defendants Tiona, Andrews, Bazar, [Wilkerson], Caldwell, Carnell, and Correctional Health Partners, [in their] failure to accommodate and treat Plaintiff's keratoconus, in the form of scleral lenses or surgery based on non-medical grounds, e.g., cost and/or budgetary reasons, w[ere] intentional or reckless, and extreme and dangerous, and caused Plaintiff severe emotional distress."  (Doc. # 53 at 23 ¶ 148.)  In support of his claim for negligent infliction of emotional distress, Plaintiff makes a similar allegation but states that Defendants "failed a legal duty [sic] to use reasonable care to avoid cau[s]ing emotional distress to Plaintiff."  (Doc. # 53 at 24 ¶ 154.)

Under Colorado law, intentional infliction of emotion distress "requires extreme and outrageous conduct that goes beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community."  *Wallin v. Dycus*, 224 Fed. Appx. 734, 740 (10th Cir. 2007) (internal quotation marks and citation omitted).  "It is the district court's role to determine whether a plaintiff's claim meets this standard."  *Id*.  Additionally, to establish a claim for negligent infliction of emotional distress, "a plaintiff must show that the defendant's negligence created an unreasonable risk of physical harm and caused the plaintiff to be put in fear for his or her own safety,

that this fear had physical consequences or resulted in long-continued emotional

disturbance, and that the plaintiff's fear was the cause of the damages sought." *Draper*

*v. DeFrenchi-Gordineer*, 282 P.3d 489, 496-97 (Colo. App. 2011).

While the Court believes that Plaintiff has alleged that he was treated poorly, he

has not alleged conduct that a reasonable person would consider outrageous or beyond

all possible bounds of decency.  In addition, Plaintiff's FAC does not contain any

allegations that Plaintiff was put in fear for his own safety and that this fear had physical

consequences or resulted in long-continued emotional disturbance.  Thus, the Court

finds that claims eleven and twelve are properly dismissed without prejudice as to all

Defendants.  *Gee*, 627 F.3d at 1186 ("[O]rdinarily the dismissal of a pro se claim under

12(b)(6) should be without prejudice.").

### H.    Claim Thirteen (Breach of Contract)

Plaintiff states in his FAC that his breach of contract claim is "being leveled

against all Defendants in their individual and official capacities as employees and

correctional officers of CCA, CEC, and CDOC."  (Doc. # 53 at 25 ¶ 158.)  Plaintiff

alleges that the failure to adequately treat his keratoconus "is a violation of a contractual

obligation by failing to one's own promise, by repudiating it, or by interfering with

another party's performance regarding the contract that all the parties entered in with

the State of Colorado and CDOC, and for failing to comply with federally imposed

conditions, although the[y] agreed to comply, in return for federal funds."  (Doc. # 53 at

25 ¶ 160.)

In his FAC, Plaintiff alleges that "CCA entered into [a] contract with the State of Colorado and CDOC to house state prisoners at KCCC, Bent County Correctional Facility, and Crowley County Correctional Facility, pursuant to contract [sic] to do so under ADA-compliant conditions." (Doc. # 53 at 10 ¶ 47.)  Plaintiff also alleges that "CCA and CEC entered into a contract with the State of Colorado and CDOC, where these private corporations agreed to implement and comply with the ADA or be subject to liability." (Doc. # 53 at 11 ¶ 55.)

Plaintiff's argument fails, however, for two reasons.  First, assuming that CCA and CEC entered into contracts with the State of Colorado and/or CDOC, Plaintiff has failed to plead facts sufficient to demonstrate that those contracts were breached.  As discussed above, Plaintiff has not set forth a valid claim that any of the Defendants violated Title II of the ADA.  Second, Plaintiff does not allege that he was a party to, or third-party beneficiary of, any of the alleged contracts.  Therefore, it is unclear whether Plaintiff would even have standing to enforce the contract.  Thus, Plaintiff's breach of contract claim is properly dismissed without prejudice against all Defendants.  *See Gee*, 627 F.3d at 1186 ("[O]rdinarily the dismissal of a pro se claim under 12(b)(6) should be without prejudice.").

## III.   <u>CONCLUSION</u>

For the foregoing reasons, it is hereby

ORDERED that the January 25, 2016 Recommendation of Magistrate Judge Shaffer (Doc. # 86) is ACCEPTED IN PART AND REJECTED IN PART; it is

FURTHER ORDERED that the motion to dismiss filed by Defendants Dr. Susan Tiona, Desiree Andrews, Greg Wilkerson, Valerie Bazar, Correctional Health Partners, and Correctional Corporation of America (Doc. # 64) is GRANTED IN PART AND DENIED IN PART; it is

FURTHER ORDERED that the motion to dismiss filed by Defendants April Caldwell, Mary Carnell, and Community Education Centers (Doc. # 66) is GRANTED IN PART AND DENIED IN PART; and it is

FURTHER ORDERED that the motion to dismiss filed by Defendants Colorado Department of Corrections and the State of Colorado (Doc. # 67) is GRANTED IN PART AND DENIED IN PART.[3]

For clarity, the Court summarizes the remaining claims and Defendants: Claim Three (Eighth Amendment) against Defendants Tiona, Bazar, Carnell, CHP, CCA, and CEC; and Claim Seven (Negligence) against Defendants Andrews, Wilkerson, Caldwell, Carnell, CHP, CCA, and CEC.

DATED: March 30, 2016              BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge

[3] In their motion to dismiss, the State of Colorado and CDOC request attorney fees incurred in defending Plaintiff's state law tort claims pursuant to Colo. Rev. Stat. § 13-17-201.  (Doc. # 67 at 19.)  However, the Court declines to rule on such a request because it was not properly raised by separate motion.